The last case on the calendar is United States v. Marshall Ms. Cassidy, whenever you are ready, I see you reserved two minutes for rebuttal Good morning, Your Honors. May it please the Court. I represent Cecil Marshall on appeal from his 48-month sentence for his violation of supervised release. The District Court in this case applied the five-year maximum sentence applicable to a Class A felony, even though Marshall's underlying offense was reduced to a Class B felony by the First Sentencing Act. The Court should have applied the three-year maximum. Three years is the maximum sentence for a VOSR for a Class B underlying offense. Section 3583E3 provides no more than three years in prison shall be imposed if the offense that resulted in the term of supervised release is a Class B felony. Marshall's offense of possessing 50 grams of cocaine is a Class B felony. We have said multiple times that that is a backwards-looking statute, and you look at the penalty and the classification at the time of the offense. Here, it was a Class A felony, right? Right. At the time of the offense. At the time of the conviction. Right. So in Johnson, we dealt with this exact argument under the Fair Sentencing Act, and we determined in Johnson there it went from a B1C to a B1C, from a Class B to a Class C felony because of the changes in the penalties in the Fair Sentencing Act. And we said in that case, the exact same argument, we look at what it was at the time of the offense. It does not matter that the Fair Sentencing Act changed the penalties. So why shouldn't we be bound by Johnson in this case? Well, we submit that these cases were wrongly decided. We have to decide it. We have to follow the prior panel. And that you're not bound, this Court is not bound, because they were based at least in part, they turned in part, on the fact that the FSA had not been made retroactive. Both Turlington and Johnson. I saw that argument, but I went back and looked at Johnson, and maybe you can point to where in Johnson we made any suggestion that it was based on the fact that it wasn't retroactive. What we said is, as we have said numerous times, that we based it on the law as it existed at the time of the underlying offense, and not the time of the supervised release violation. So that suggests retroactivity is irrelevant. If we look at what it was at the time of the offense, it doesn't matter what changes of law and whether they're retroactive or not, right? Well, both Johnson, Turlington, and Ortiz in all three of those cases, which were the cases holding this, they addressed the question of whether Dorsey, the Supreme Court's decision in Dorsey, affected the answer, the answer to this question. And they have no, because the FSA, even though Dorsey held that the FSA applies to those who committed the crime before the FSA, but were sentenced after, it doesn't apply to this because the FSA has not been made retroactive. All of them said that, and at Johnson, it's at page 244 in the paragraph that begins with, in Dorsey v. United States, our court has held that the FSA does not apply retroactively to the defendants, and Dorsey doesn't change that. Therefore, it doesn't change anything here. And it cannot, Dorsey only affects the case if Johnson- But the fair sentencing, it doesn't even require that the maximum penalty be changed. It's completely discretionary. So, for example, if your client had gotten 40 years at the time of the initial sentencing, right? Right, yes. And the first step back gets passed. He goes before the judge. So that's a class A felony, right? 40 years of class A felony, right? He goes before the judge after the first step back, says, judge, I want you to reduce my sentence. The judge says, no, I think 40 years is appropriate. I'm keeping it. The judge would be completely entitled to do that, and it would still be a class A felony, even after the first step back. And yet you're arguing to us that even though it would remain, for penalties purposes, 40 years of class A felony, somehow his supervised release maximum should be reduced once he gets out of jail after that 40-year sentence. That doesn't make any sense, right? Well, it makes sense because he's being sentenced now for something new, for new conduct. The supervised release violation is new conduct that he's being sentenced for. It's not really for his old- Well, the sentence goes back to the original offense. Pardon me? I mean, you're sentenced for a parole violation, and parole was imposed as a result of the nothing to do with the violation. Parole was imposed as a sentencing measure after the first offense. Right. So the sentencing goes back to the first offense. Well, yes, Your Honor. There are all those cases that the government relies on, and they've played a part in these holdings as well, that the sentence relates back to the original offense. But those are all double jeopardy cases. And there's no logical reason why the fact that the sentence is considered to be part of the original sentence, the revocation is considered to be part of the original sentence for double jeopardy purposes, that doesn't logically follow that, therefore, if the classifications of the offense are reduced, that the penalties going well into the future for supervised release should stay the same, even though Congress has made a decision that the sentences for this conduct must be lower. And the sentences for this conduct, for this offense, not for the conviction, but for this offense- Not must be lower. Can be lower. It doesn't say it must be lower. Well, it must be- The language is may impose a reduced sentence, as if Sections 2 and 3 of the Fair Sentencing Act were in effect at the time of the covered offense. That's not retroactive. But that's for going in and trying to change the original sentence. This is actually, this is the sentence, the supervised release sentence. It's a sentence for new conduct. It's prospective. And so the FSA should apply. And we're not contending that the First Step Act making this retroactive is what- The sentencing is for the prior conduct. And the parole violation sentencing is for the prior conduct. Well- It's not for this conduct. This conduct is the basis for making a decision. But the alteration to the sentence is his prior sentence. Well, that's a sort of fiction. That's a sort of fiction that the courts have imposed for double jeopardy purposes. But it is for new conduct. If not for the new conduct, he would be free. He would not be sentenced. I know. You keep saying for double jeopardy. Well, there would be double jeopardy, right? Because he's been sentenced now for the new conduct, and he can't be tried and sentenced for that anymore. But aside from double jeopardy, the question here is what maximum should apply. Even aside from double jeopardy, we've always considered supervised release to be a component of the original sentencing, not just in every context. We always have said that. There's an imprisonment portion, and then it's followed by supervised release. So it's all part of the original sentence, not just for double jeopardy purposes. But the question is still which penalties should apply. So we submit that these cases were badly reasoned because all they did, Ortiz, Johnson, Turlington, starting with Turlington, was lift the holding of McNeill, which was considering a very different statute, the ACCA statute, and the language there is if the conviction was for a Class B felony, whereas this statute says if the offense is a Class B felony. McNeill held that the ACCA language, if the conviction was, was backward looking. And Turlington said, well, McNeill held this, so we're holding this in this case. It's the same kind of idea, but it's not because the statutory language is very different, and the interpretation depends on the statutory language. So I'm not arguing here that the retroactivity under the First Step Act is what requires the sentences, the new sentences to be imposed for current violations. What I'm arguing is that the fact that all those cases turned on the lack of retroactivity gives this Court an opportunity to reconsider this because the assumption, one of the assumptions underlying Turlington, Johnson, and Ortiz has been changed. And so if the Court reconsiders, it doesn't make sense, these holdings don't make sense, and the Court should follow the plain language, the recent holding of Dorsey, which is to apply current law, particularly when dealing with the FSA, and the strong policy that Congress has adopted. Thank you, Ms. Cassidy. You have your two minutes for rebuttal. We'll hear from the government. Thank you. Ms. Messiter. May it please the Court, my name is Alex Messiter, and I'm an assistant United States attorney in the Southern District of New York. I represent the United States in this appeal, and I also represented the United States in the Court below. The District Court imposed a lawful sentence of 48 months imprisonment for Marshall's egregious violations of the conditions of a supervised release. As Judge Bianco recognized, the law in this Circuit is well settled that a post-revocation sentence is governed by the law in place at the time of the defendant's original offense. That's been recognized by this Court repeatedly, not only in Johnson, but also in cases such as Leon and Ortiz that were not about the Fair Sentencing Act and thus could not have turned on its lack of retroactivity. And accordingly, this Court has held that the penalties that apply at a post-revocation sentence are determined by reference to the law in effect at the time of the defendant's underlying offense. And so the arguments that Marshall is making today are squarely foreclosed by this Court's binding precedence whether or not the defendant agrees with the reasoning in those cases. Marshall claims today that those precedents are no longer good law in light of the passage of the First Step Act, but that argument fails for at least two separate reasons. First, this Court's repeated holding that post-revocation penalties are determined by the law in place at the time of the underlying conviction is supported by multiple rationales, which remain valid notwithstanding the First Step Act, and again do not turn on a lack of retroactivity of the Fair Sentencing Act. First, this Court in Ortiz has already determined that Section 3583E3 is a backward-looking statute that by its own terms is focused on the offense that resulted in the term of supervised release. And so in other words, it focuses, and this is quoting Ortiz, it focuses on the previous underlying conviction. Second, and along the same lines, contrary to the defendant's representation today, Mr. Marshall was not being sentenced for something new, but in fact both the Supreme Court and this Court have repeatedly made clear that in a post-revocation sentence it is part of the original sentence, and that is recognized among other places in the Supreme Court's decision in Johnson v. the United States. And that is in no way limited to case law concerning double jeopardy. And third, this Court has also made clear that revocation proceedings should not be impeded by other issues, and instead defendants should be required to use the proper avenues of relief, and certainly that is applicable here. And turning to those proper avenues, the second reason that the defendant's argument fails is because by claiming that the First Step Act overturns this Court's precedent, Marshall is ignoring the substantive limits inherent in the First Step Act itself. The First Step Act does provide retroactive release, that is true, but it does so only in a limited and carefully calibrated way. As Judge Bianco noted, the First Step Act does not impose the sort of mandatory automatic sentence reduction that Marshall argues for here, even for a defendant who is still serving an underlying sentence without a revocation hearing for a covered offense. In fact, both explicitly in the Act itself, in subsection C of section 404, and, for instance, in the Supreme Court's decision in Concepcion, it is underscored that no sentence reduction is ever required under the First Step Act, even when a defendant is eligible. And so there is nothing in the First Step Act that supports the sort of automatic, mandatory reclassification of felony classifications or the sort of automatic, mandatory reduction of penalties that Marshall seeks. And so in sum, it is undisputed that Marshall's B1A drug conviction for violating, excuse me, his B1A drug conviction was class A felony at the time of the underlying offense because binding precedent establishes that a post-revocation sentence is part of that underlying offense and original sentence. It's governed by the law in place at the time of the original conviction. And so Marshall continues to be subject to that maximum penalty, and the sentence imposed was lawful. Unless Your Honors have questions, I will rest on my submission. Thank you. Ms. Cassidy, you have two minutes in your vote. I'll be briefer than that, I think. Okay. First, Johnson is really the only case that directly holds that the reclassifications by the FSA shouldn't apply to supervised release violations. Leon did not address this issue. I just read it again this morning. It says nothing about this issue. Ortiz addressed whether changes in case law that affected the classifications of, I think, ACCA should be considered, you know, the current case law should be considered. It was really a way of bringing up a habeas case indirectly, and the court rejected that. In Johnson, this court acknowledged that this was the first time it was addressing the reclassifications by the FSA and it had to address it even though Ortiz had addressed a different issue. So Johnson is the only case. And Johnson relies on Turlington, and they both are badly, badly reasoned because they ignore the plain language of the statute of 3583. And all we're arguing is to take a new look at the plain language of the statute and the initial reasoning of this case because its reasoning has been at least partially undermined by the change in the law. And as this court held in Pogaro, where a Supreme Court's conclusion or a statute in a particular case where the link on which we premised our prior decision is undermined or an assumption of that decision is undermined, we are not bound by that prior ruling. And because one of the assumptions underlying the prior ruling in Johnson, which was the non-retroactivity of the FSA, has been undermined, we contend that this court can reconsider and it should reconsider. All right. Thank you, Ms. Caskey. Thank you, Ms. Messiter. We'll reserve the decision. Have a good day.